UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| DAMON CLEMONS, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | No. 2:17 CV 11 |
| CITY OF HOBART, CITY OF HOBART POLICE DEPARTMENT, OFFICER G. VIATOR #104, in his individual and official capacity, SERGEANT CLAUSSEN, in his individual and official capacity, and CEC ENTERTAINMENT, INC., | ) |  |
| Defendants. | ) |  |

## OPINION and ORDER

I. BACKGROUND

Officer G. Viator, a police officer with the Lake Station Police Department, was "working security"[1] at the Chuck E. Cheese restaurant in Hobart, Indiana, on October 19, 2014. (DE # 50-6 at 1.) Plaintiff Damon Clemons was also there; he had accompanied

---

[1] The circumstances surrounding Officer Viator's "work" at Chuck E. Cheese that night – and in particular, who he was working for and in what capacity – is terribly murky. David Deck, Deputy General Counsel of CEC, attests that Officer Viator was an "off-duty police officer who was assigned by an officer of the City of Hobart's Police Department in charge of scheduling officers assigned to the subject Chuck E. Cheese's restaurant." (DE # 54-3 at ¶ 6.) This is interesting, as by all accounts Officer Viator was employed by the Lake Station Police Department, not the City of Hobart Police Department. But the situation only gets more foggy, because CEC appears to avoid the issue of whether it paid Officer Viator in its briefing. Specifically, in a section of the brief devoted to compensation, where one would reasonably expect compensation to be addressed, CEC provides one sentence: a recitation of Deck's statement that Officer Viator was assigned by the City of Hobart's Police Department. (DE # 53-1 at 8.) It is unclear whether opacity regarding this subject was strategic or simple oversight, but the murkiness persists.

his brother, JR Clemons, and his niece to the restaurant. Pl. Dep. 31 (DE # 61-1). At one point, JR discovered that their coats had been moved by other individuals, and an argument broke out between them and JR. Pl. Dep. 33-34. According to plaintiff's version of the events, by the time he got over to JR, Officer Viator was already on the scene. Pl. Dep. 35:6-9.

Video surveillance of the restaurant (DE # 57, Exs. B, C, D) reveals that plaintiff interacted with Officer Viator while Officer Viator was attempting to handle JR. (DE # 57, Ex. D, at 5:29:13-20.) The video shows plaintiff inserting his hands into the space between Officer Viator and JR. At one point, plaintiff places his hand directly in front of Officer Viator's face, appearing to block Officer Viator's view of JR. (*Id.* at 5:29:17.) Officer Viator argues in his brief that plaintiff put both hands on his arm (DE # 49-1 at 3), while plaintiff asserts that he "never interfered" and was merely telling JR to "cuff up." Pl. Dep. 36:15-17, 121:17.

The video evidence shows that plaintiff then moved back a few feet. (DE # 57, Ex. D, at 5:29:20-21.) Plaintiff claims that, at this point, a Chuck E. Cheese manager instructed plaintiff to stay where he was. Pl. Dep. 37:5-9. Plaintiff asserts that he felt that another patron was about to hit him, so he attempted to move away, but the manager blocked him with an arm. Pl. Dep. 37-39. Plaintiff claims that he tried to go under his arm, and the manager tried to get him in a choke hold. Pl. Dep. 40:14-22.

Next, according to plaintiff, the manager attempted to restrain him by the legs. Pl. Dep. 126:7-10. Plaintiff admits that he attempted to avoid being restrained during

2

this time. Pl. Dep. 119:21-22 ("I broke my legs free with my feet."); Pl. Dep. 119:14-16 ("He was frustrated because he couldn't get ahold of me 'cause I kept moving."); Pl. Dep. 125:17-18 ("I basically was trying not to let him get a grip on me, that's all."). Then, Officer Viator hit him in the eye. Pl. Dep. 126:7-10. Plaintiff claims he was then told "[g]ive me your hands," at which point he complied and was handcuffed. Pl. Dep. 126:13-17.

After this, plaintiff alleges he was slammed "right on his face." Pl. Dep. 126:14-15. Plaintiff further alleges that he was then punched in the ribs and face by Officer Viator, while the manager grabbed his handcuffs and twisted his hands and fingers. Pl. Dep. 127:5-6; 129:4-9. Ultimately, plaintiff suffered a lacerated cornea, optical floor damage, and an eye socket that was cracked in three different places. Pl. Dep. 43:24-25, 44:1-5.

Plaintiff sued the City of Hobart, the City of Hobart Police Department, another officer named Sergeant Claussen (collectively, "the City defendants"), Officer Viator, and CEC Entertainment, Inc. ("CEC"). (DE # 3-1.) Plaintiff's suit alleges that defendants committed state and federal constitutional violations (specifically, unreasonable search and seizure, false arrest, false imprisonment, and excessive use of force in violation of the United States Constitution, and false arrest and false imprisonment in violation of the Constitution of the State of Indiana), and the state law torts of battery and intentional infliction of emotional distress ("IIED"). (*Id.*)

Officer Viator, CEC, and the City defendants have each filed a motion for summary judgment on all claims. (DE ## 48, 52, 58.) The briefing period has expired for all motions, and they are ripe for ruling. Each motion is addressed in turn below.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In responding to a motion for summary judgment, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Palmer v. Marion County,* 327 F.3d 588, 595 (7th Cir. 2003). In doing so, the non-moving party cannot rest on the pleadings alone, but must present fresh proof in support of its position. *Anderson,* 477 U.S. at 248; *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007).

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th

4

Cir. 1994). In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.,* 45 F.3d 231, 234 (7th Cir. 1995).

## III. DISCUSSION

### A. Officer Viator's Motion for Summary Judgment

Officer Viator moves for summary judgment on the claims against him, arguing that he should not be held liable for any of the eight claims in this case. He also argues that he is entitled to qualified immunity. It is useful to group the claims into two categories for purposes of addressing this motion. In the first category are plaintiff's claims for unreasonable search and seizure, false arrest, and false imprisonment (Counts I, II, V, VII, and VIII). The second set of claims includes excessive force, battery, and intentional infliction of emotional distress (Counts III, IV, and VI).

#### 1. *Search and Seizure, False Arrest, and False Imprisonment*

The first set of plaintiff's claims (federal and state claims for unreasonable search and seizure, false arrest, and false imprisonment) can be grouped together because a finding of probable cause forecloses each. This is true both at the federal level, *Fleming v. Livingston Cty., Ill.,* 674 F.3d 874, 878–79 (7th Cir. 2012); *Gibbs v. Lomas,* 755 F.3d 529, 537 (7th Cir. 2014); *Hawkins v. Mitchell,* 756 F.3d 983, 994 (7th Cir. 2014), and at the state level, *Row v. Holt,* 864 N.E.2d 1011, 1017 (Ind. 2007). Federal jurisprudence instructs that a police officer has probable cause when, at the moment the decision is made, the facts

and circumstances within his knowledge and of which he has reasonably trustworthy information would warrant a prudent person in believing that the suspect had committed or was committing an offense. *Fleming,* 674 F.3d at 878–79. This standard does not require that the officer's belief be correct or even more likely true than false, so long as it is reasonable. *Id.* The probable cause standard is the same under Indiana law. *Row,* 864 N.E.2d at 1017.

In this case, plaintiff's own description of the events indicate that before he got involved, a chaotic fight scene was taking place. Pl. Dep. 118:10-12 ("Then the guy came in between and push my brother. JR hit him and then muffed that girl, you know what I'm saying?"). The video evidence highlights the melee occurring. (DE # 57, Exs. B, D.) It is undisputed that Officer Viator attempted to arrest JR. The video evidence shows plaintiff's interaction with Officer Viator while Officer Viator was attempting to handle JR. (DE # 57, Ex. D, at 5:29:13-20.) Viewed in a light most favorable to plaintiff, the video shows plaintiff inserting his arms into the space between Officer Viator and JR; at one point, plaintiff places his hand directly in front of Officer Viator's face, appearing to block Officer Viator's view of JR, with whom Officer Viator is struggling. (*Id.* at 5:29:17.) It is unclear if plaintiff physically contacted Officer Viator at this point. In any case, the video evidence contradicts plaintiff's blanket assertion that he "never interfered" and was merely telling JR to "cuff up" (presumably, to cooperate).

The question is whether, under these circumstances, a prudent person would be warranted in believing that plaintiff was committing an offense – namely, interfering

with Officer Viator's attempts to control JR and the fight scene. Indiana law states that a person who "forcibly resists, obstructs, or interferes with a law enforcement officer" commits the Class A misdemeanor of resisting law enforcement. Ind. Code § 35-44.1-3-1(a)(1). The parties argue over what degree of force required to satisfy the statute. Indeed, the courts of Indiana are conflicted on this subject, as well. *Compare Spangler v. State,* 607 N.E.2d 720, 723 (Ind. 1993) (finding that passive resistance in form of walking away from officers did not satisfy statute and holding: "[I]t is error to find that mere action . . . falls within the statute, absent a showing of use of force."), *with Guthrie v. State,* 720 N.E.2d 7, 9 (Ind. Ct. App. 1999) (examining *Spangler* and concluding that resisting in meaningful way that extends beyond mere passive resistance, such as by leaning body back and stiffening legs while officers were attempting to walk with him, qualifies under statute); *Johnson v. State,* 833 N.E.2d 516, 519 (Ind. Ct. App. 2005) (examining *Spangler* and concluding that "stiffening up" and thereby requiring that the officers exert force to place him inside transport vehicle satisfied statute).

Even viewing the evidence in a light most favorably to plaintiff (that is, viewing the video evidence as suggesting plaintiff inserted his arms between Officer Viator and JR and blocked Officer Viator's view, but did not touch him), this case does not seem akin to *Spangler.* In *Spangler,* the subject was walking away, which the Indiana Supreme Court viewed as passive resistance. Here, plaintiff injected himself into an ongoing arrest with his limbs, which is not passive at all. To this court, plaintiff's behavior is more like the subjects in *Guthrie* and *Johnson*, because he interfered in a meaningful way

7

that extended beyond mere passive resistance. Accordingly, the court finds that plaintiff's conduct satisfied the Indiana resistance statute, supplying the underlying offense necessary to support a finding that Officer Viator possessed probable cause to effectuate plaintiff's arrest and detention. A reasonable officer under these circumstances would have believed that plaintiff, by imposing his arms between the officer and JR and blocking his view at one point, was interfering with an arrest in violation of Ind. Code § 35-44.1-3-1(a)(1). Accordingly, probable cause existed for plaintiff's arrest, negating plaintiff's state and federal search and seizure, false arrest, and false imprisonment claims.

Even if this case proved a closer one than this court has concluded, and *Spangler* did control, qualified immunity would function to shield Officer Viator from liability on the federal constitutional claims. In close cases such as this one, the law is not so clear that a reasonable officer would know he lacked probable cause to arrest plaintiff when he injected his arms into an ongoing arrest and blocked the officer's view in the midst of the chaos of the situation. Therefore, even if Officer Viator did lack probable cause to arrest plaintiff in this instance, qualified immunity would apply to plaintiff's federal constitutional claims. *Ferrell v. Bieker*, No. 1:03-CV-27-TS, 2006 WL 287173, at *10 (N.D. Ind. Feb. 3, 2006) (significant confusion created by *Spangler* and Indiana caselaw that followed warranted grant of qualified immunity to officer who arrested defendant who refused to exit car, locked doors, and rolled up window).

## 2. *Excessive Force, Battery, and IIED*

The second set of plaintiff's claims consists of his federal claim for excessive force and two state claims, battery and IIED. These claims possess overlapping issues of fact which make it useful to consider them together.

The first of these claims is plaintiff's federal excessive force claim. The facts underlying this claim, taken in a light most favorable to plaintiff, are that plaintiff was initially resisting arrest and attempting to avoid being restrained. Pl. Dep. 119:21-22; Pl. Dep. 119:14-16; Pl. Dep. 125:17-18. Next, according to plaintiff, the manager restrained him by the legs and the officer hit him in the eye. Pl. Dep. 126:7-10. Then, plaintiff was told "Give me your hands," at which point he claims he complied and was handcuffed. Pl. Dep. 126:13-17. After this, plaintiff alleges he was slammed "right on his face." Pl. Dep. 126:14-15. Plaintiff further alleges that he was then punched in the ribs and face by Officer Viator, while the manager grabbed his handcuffs and twisted his hands and fingers. Pl. Dep. 127:5-6; 129:4-9.

If plaintiff's version of the events are believed, a fact finder could determine that excessive force was employed, including and especially after plaintiff was handcuffed. The Seventh Circuit has stated: "[I]t is one thing to use force in subduing a potentially dangerous or violent suspect, and quite another to proceed to gratuitously beat him. . . . The fact that a certain degree of force may have been justified earlier in the encounter to restrain [the subject] does not mean that such force still was justified once [he] had been restrained." *Frazell v. Flanigan,* 102 F.3d 877, 885 (7th Cir. 1996), *overruled on other*

*grounds by McNair v. Coffeey,* 279 F.3d 463 (7th Cir. 2002). More specifically, Seventh Circuit precedent has established that it is not reasonable as a matter of law to slam a handcuffed arrestee against another object. *Clash v. Beatty,* 77 F.3d 1045, 1048 (7th Cir. 1996) (unreasonable as a matter of law to shove handcuffed arrestee into car). Further, the Seventh Circuit has held that it violates one's Fourth Amendment rights to be beaten after handcuffing. *Sallenger v. Oakes,* 473 F.3d 731 (7th Cir. 2007) (administering closed-fist punches and flashlight blows after arrestee was handcuffed, continuing to strike arrestee after he had stopped resisting, and failing to place arrestee in proper position after hobbling him violated his right to be free from excessive force). Under these cases, this court cannot grant summary judgment to Officer Viator on the excessive force claim. Questions of fact remain as to whether Officer Viator used excessive force. In other words, a jury must decide if plaintiff's version of the events is true and whether the force it believes Officer Viator used was reasonable or not.

Qualified immunity can protect an officer from suit if applicable law was not "clearly established" at the relevant time. *Saucier v. Katz,* 533 U.S. 194, 200–01 (2001). However, the previously cited Seventh Circuit cases demonstrate that the law regarding shoving and beating a defendant after handcuffing was clearly established at the time in question. In those cases, the Seventh Circuit also determined that granting qualified immunity was not appropriate. *Clash,* 77 F.3d at 1048 (affirming district court's denial of summary judgment based on qualified immunity); *Sallenger,* 473 F.3d 731 (arresting officers were not entitled to qualified immunity). Accordingly, this is not a case where

qualified immunity can shield Officer Viator from a trial on the merits. A jury may determine that excessive force was employed, or it may decide that the use of force was reasonable, but the issue cannot be determined at this stage.

The same questions of fact that prevent summary judgment on the excessive force claim also prevent the court from entering summary judgment in Officer Viator's favor on the battery claim. Put another way, if a jury finds that Officer Viator used an unreasonable amount of force, it could also find that Officer Viator committed the tort of battery. *City of S. Bend v. Fleming,* 397 N.E.2d 1075, 1077 (Ind. Ct. App. 1979) (officer who uses unnecessary force is no longer privileged and is answerable for assault and battery). The same is also true of the IIED claim. An element of the claim is that defendant engaged in "extreme and outrageous conduct." *Waldrip v. Waldrip,* 976 N.E.2d 102, 117 (Ind. App. 2012). Because a jury should decide whether the force Officer Viator used was excessive, a jury should also decide whether Officer Viator's conduct was extreme and outrageous under the circumstances.

**B.     CEC's Motion for Summary Judgment**

CEC moves for summary judgment, solely on the grounds that it was not Officer Viator's employer. However, genuine issues of material fact exist on this point. For example, as CEC admits, a significant factor in determining whether Officer Viator was CEC's employee or not was whether CEC paid Officer Viator for his services. *Moberly v. Day,* 757 N.E.2d 1007, 1012 (Ind. 2001). In the section of its memorandum on the issue of payment, CEC appears to carefully sidestep the question; CEC devotes only one

substantive sentence to the issue and uses it to state that Officer Viator was assigned to CEC by an officer of the City of Hobart Police Department. (DE # 53-1 at 8.)

Another example of an issue of fact preventing summary judgment for CEC is the question of whether CEC controlled Officer Viator's work. The right to control the work performed is "important and in many situations . . . determinative" of whether an individual was functioning as a business's employee. *Id.* at 1010. Here, issues of fact exist as to whether CEC controlled Officer Viator's work while at CEC, including when the CEC manager and Officer Viator were working simultaneously to restrain plaintiff. As these examples show, when taken in a light most favorable to plaintiff, genuine issues of material fact exist as to whether CEC is Officer Viator's employer for purposes of this case. Accordingly, CEC's motion for summary judgment is denied.

### C. City Defendants' Motion for Summary Judgment

The City defendants have moved for summary judgment, arguing that they had no involvement in any alleged deprivation of plaintiff's rights. Plaintiff, who is represented by counsel and not proceeding *pro se*, did not respond to this motion, abandoning all claims he may have had against these defendants. *Palmer v. Marion County,* 327 F.3d 588, 597-98 (7th Cir. 2003). Accordingly, the City defendants' motion for summary judgment is granted.

## IV. CONCLUSION

For the foregoing reasons, the court:

1. **GRANTS, in part, and DENIES, in part,** the motion of Officer Viator for summary judgment (DE # 48);

2. **DENIES** the motion of CEC Entertainment, Inc., for summary judgment (DE # 52);

3. **GRANTS** the motion of Sergeant Claussen, the City of Hobart, and the City of Hobart Police Department for summary judgment (DE # 58); and

4. **REFERS** this matter, pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a), to Magistrate Judge Andrew P. Rodovich for purposes of holding a settlement conference within 60 days of the date of this order. The court will set a trial date under separate order, if necessary.

#### SO ORDERED.

Date: March 13, 2019

 s/ James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT